[No. 15521.   Department One.—January 5, 1895.]

WILLIAM STEWART, APPELLANT, v. R. M. KYSER, RESPONDENT.

CONSTITUTIONAL LAW—QUALIFICATIONS OF ELECTORS—GAINING OR LOSING RESIDENCE—INTENTION.—The fourth section of the second article of the State constitution, which provides that "for the purpose of voting no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States, nor while engaged in the navigation of the waters of this state, or of the United States, or of the high seas, nor while a student at any seminary of learning, nor while kept at any almshouse or other asylum at public expense, nor while confined in any public prison," does not preclude the gaining of a residence for the purpose of voting, by soldiers, college students, or inhabitants of a Veterans' Home, or infirmary, upon proof of their intention to acquire a domicile in the county of which they are the inhabitants.

APPEAL from the judgment of the Superior Court of Napa County.

The facts are stated in the opinion of the court.

*F. E. Johnston, Henry Hogan,* and *Garret M. McEnerney,* for Appellant.

Neither the inmates of the Veterans' Home, nor the inmates of the County Infirmary, nor the students attending college, were legal residents of the several precincts in which they were permitted to vote. (*Vanderpoel* v. *O'Hanlon,* 53 Iowa, 246; 36 Am. Rep. 216; *Sanders* v. *Getchell,* 76 Me. 158; 49 Am. Rep. 606; *Day* v. *Jones,* 31 Cal. 261; *Dale* v. *Irwin,* 78 Ill. 170; McCrary on Elections, secs. 55, 56, 81; *State* v. *Daniels,* 44 N. H. 383; *Fry's Election Case,* 71 Pa. St. 302; 10 Am. Rep. 698; *Lower Oxford Contested Election,* 11 Phila. 641; *Clark* v. *Robinson,* 88 Ill. 498; *Covode* v. *Foster,* 4 Brewst. 414.) In ascertaining, "for the purpose of voting," the residence of an inmate of an almshouse or asylum, while kept therein at public expense, neither the presence in that asylum or almshouse of such inmate, nor his absence from the residence which he had at the time of entering therein, must be taken into account, but such residence must be determined from other circumstances. Where one is a legal resident and elector of the precinct at the time of his entry into the home, neither the fact of such entry, nor the fact that he was kept therein at public expense, would destroy the residence which he had prior to and at the time of such entry. (*People* v. *Riley,* 15 Cal. 48; *People* v. *Holden,* 28 Cal. 123, 137; *Devlin* v. *Anderson,* 38 Cal. 93; *People* v. *Hanna,* 98 Mich. 515; *Wolcott* v. *Holcomb,* 97 Mich. 361; *Silvey* v. *Lindsay,* 107 N.Y., 55, 61.)

*H. M. Barstow* and *T. B. Hutchinson,* for Respondent.

Inmates of the Veterans' Home are residents of the precinct within which it is situated, and are entitled to vote in such precinct. (*Sinks* v. *Reese,* 19 Ohio St. 306; 2 Am. Rep. 397; *Renner* v. *Bennett,* 21 Ohio St. 431–40.) Inmates of a county almshouse or students at college possessing the other requisite qualifications are residents and voters of the precinct within which the buildings are situated. (*Dale* v. *Irwin,* 78 Ill. 170; *Sturgeon* v. *Korte,* 34 Ohio St. 525; *In re Ward,* 20 N. Y. Supp. 606.)

Finality is not an element in determining domicile. It is not necessary that there should be an intention to remain permanently at the chosen domicile; it is enough if it is for the time the home of the voter to the exclusion of other places. (*Pedigo* v. *Grimes*, 113 Ind. 148. See, also, Cooley's Constitutional Limitations, 5th ed., 754; Story on Conflict of Laws, sec. 43; *Cessna* v. *Myers*, *vide* McCrary on Elections, sec. 70; *In re Ward*, 20 N. Y. Supp. 606.)

The COURT.—This is a proceeding by which the plaintiff contested the election of the defendant to the office of public administrator of the county of Napa, on the ground that a number of votes cast and counted for defendant, more than equal to the majority by which he had been declared elected, were illegal, solely because the persons who cast them were not residents of the precincts in which they voted.

The court found that defendant had received sixteen hundred and seven-one legal votes, and that the contestant had received only sixteen hundred and fifty-six votes; and thereupon adjudged that the defendant had been duly elected.

The contestant, within sixty days after the entry of the judgment, appealed therefrom on the judgment-roll, including a bill of exceptions as to matters of law and fact.

The bill of exceptions shows that a number of the inmates of the Veterans' Home, and inmates of the County Infirmary and certain students of the Napa College voted at the election in the precincts of said county in which those institutions are respectively situated; and appellant contends that such inmates and students had not been residents of the county and of the precincts in which they respectively voted during the period of thirty days immediately prior to the election; and, therefore, that they were not qualified electors.

Counsel for appellant have taken the testimony of their witness, Killalee, as a sample of that of some six-

teen other inmates of the Veterans' Home who were called and testified at the instance of plaintiff, and correctly represents it as follows: "Killalee came to the county and to the precinct and entered the home as an inmate on November 14, 1891. For some time prior to this date he was living on the charity of relatives and friends in the city and county of San Francisco, where he was an elector. He made and subscribed the usual application, and obtained a permit to enter the home. He says that 'the reason I went there was because I was in indigent circumstances. Circumstances compelled me to go, and I would not have gone there had it not been for those circumstances. I had no desire to become a resident of the Veterans' Home or the precinct other than as induced by my indigent circumstances. Since I have been there I have been maintained and supported by the home. At the time I went there I did not have any fixed intention with respect to the length of time I should stay there: it was my intention to stop there as long as I lived. I have no other interests in the precinct except my relations with the home: I went there with the expectation of living and dying there—making it my permanent home the balance of my life. I have no relatives or property interest in the Veterans' Home precinct. I have no other home. At the time I went there it was my intention to make the home my permanent home. I made it as a home to live and die—as a refuge.'"

And counsel for appellant further say: "There is no claim made that the witness was not a citizen of the United States, of lawful age, and having been in the state, county, and precinct a sufficient length of time to entitle him to vote; but the claim is, that he was not a resident of the precinct and county in which he claimed his vote and voted, within the meaning of section 4 of article II of the constitution. The question presented is whether or not Killalee was a legal resident of the Veterans' Home precinct, and entitled to vote at the last general election."

It being thus properly conceded that the witness had all the requisite qualifications of an elector of the Veterans' Home precinct, except the intention to abandon his former residence and to adopt and make the Veterans' Home his place of residence, the controversy is still further reduced to the simple question of fact as to whether or not he went to the Veterans' Home and remained there with such intention. And upon this issue the uncontradicted testimony of the witness that such was his intention is abundantly sufficient to justify the finding of the court to that effect. The circumstances and motives by which he was induced to change his residence, so far as disclosed, are immaterial.

The evidence upon the issue as to the qualifications of Killalee is, substantially, a fair sample of that applicable to each of the other inmates of the Veterans' Home, the infirmary, and the college, whose votes were adjudged by the court to have been legal. In other words, if Killalee was a qualified elector of the precinct in which he voted, the judgment is right.

It is contended for appellant, however, that Killalee could not have gained a residence for the purpose of voting at the Veterans' Home while there as a beneficiary at public expense, for the reason that the gaining of such residence is prohibited by the fourth section of the second article of the constitution of this state, which is as follows:

"For the purpose of voting no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States, nor while engaged in the navigation of the waters of this state, or of the United States, or of the high seas; nor while a student at any seminary of learning; nor while kept at any almshouse or other asylum at public expense; nor while confined in any public prison."

As construed by our supreme court in the case of *Budd* v. *Holden*, 28 Cal. 137, this section does not have

the effect claimed for it by counsel for appellant. In that case the qualification of soldiers to vote, while employed in the service of the United States, was questioned; and it was *decided* that their presence in Mendocino county, while thus employed in the service of the United States, did not "preclude them from acquiring a residence in Mendocino, if disposed to do so." The court further said: "That it was their *intention* to acquire a domicile in Mendocino county sufficiently appears from the evidence. Such being the case, there is nothing in the constitutional provision in question (which is merely declaratory of the common law) which stands in the way of their doing so." Thus their residence for the purpose of voting in Mendocino county was made to depend upon proof of their *intention* to make that county their place of residence while they were there present in the service of the United States; there being no question that they had all other requisite qualifications of electors.

Whatever may be said of some portions of the language used, *arguendo*, in the opinion of Chief Justice Sanderson in that case, the *decision* is clearly in point for the respondent in this case. And upon the authority of that decision the judgment of the trial court in this case is affirmed.

Hearing in Bank denied.

BEATTY, C. J., dissented from the order denying a hearing in Bank.