[S. F. No. 2309.   Department Two.—January 4, 1905.]

## EDWARD I. SHEEHAN, Respondent, v. JOSEPH H. SCOTT, Appellant.

ELECTIONS—TAX-COLLECTOR — QUALIFICATIONS FOR OFFICE — RESIDENCE FOR FIVE YEARS BEFORE ELECTION—SAN FRANCISCO CHARTER.—Under the charter of San Francisco the tax-collector must be an elector of the city and county at the time of his election, and for five years previous thereto; and if he has not those qualifications at the time of his election he is not capable of being elected to that office, and will not be entitled to hold the office, even though he has received a majority of the votes cast at the election.   It is of no avail that he has the requisite qualifications at the time of taking office.

ID.—CONSTITUTIONAL LAW—LEGISLATIVE POWER — QUALIFICATIONS FOR OFFICE.—The constitution of the state is not a grant of power, and the legislative power which is vested in the senate and assembly includes all power not expressly prohibited to the legislature or elsewhere conferred.   Though the legislature cannot increase or diminish the qualifications which the constitution has prescribed for eligibility to the offices created by that instrument, nevertheless, for all offices which the legislature may authorize or establish, it may prescribe such qualifications as in its judgment will best accord with public policy or subserve the interests of those affected thereby.

ID.—QUALIFICATIONS IN MUNICIPAL CHARTER—LEGISLATIVE AUTHORITY OF STATE.—The authority to provide a municipal government is referable to the lawmaking power of the state, and the enactment of a charter for a municipality is a legislative act, and the authority withdrawn from the legislature and given to the city is part of the lawmaking power of the state.   The adoption of the charter by the city, and its approval by the legislature, have the same effect as that of a law passed by bill.   The provisions of the San Francisco charter in reference to the qualifications for eligibility to the office of tax-collector have been established by the legislative authority of the state, and are valid.

ID.—FINDING AGAINST QUALIFICATIONS—RESIDENCE FOR FIVE YEARS—SUFFICIENCY OF EVIDENCE—PROBATIVE FACTS.—A finding of the court that the appellant had not been a resident elector of the city of San Francisco for the period of five years next preceding the date of the election is sufficiently sustained, and must be accepted as correct, in so far as the determination of the court upon the probative facts upon which the ultimate fact depends was made upon conflicting evidence or by reason of inferences from established facts.

ID.—CHANGE OF DOMICILE—BURDEN OF PROOF—DECLARATIONS OF INTENTION—UNION OF ACT AND INTENT REQUIRED.—The burden of proof

was upon the appellant, who had acquired a domicile in another county to prove a change of domicile; and evidence of mere declarations of future intention will not affect the residence until the intention is carried into effect by the completed act. The residence can be changed only by the union of act and intent.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion.

A. A. Moore, and A. Ruef, for Appellant.

Garret W. McEnerney, and John S. Drum, for Respondent.

HARRISON, C.—At the municipal election held in San Francisco November 7, 1899, the appellant received a plurality of all the votes cast for the office of tax-collector of said city and county, and thereafter the board of election commissioners declared him to have been elected to said office for the term of two years from the first Monday after the first day of January, 1900, and issued to him a certificate of election therefor. The respondent herein—an elector of said city and county—contested his right to the office upon the ground that under the provisions of the charter of San Francisco he was not at the time of his election eligible to such office, and on December 22, 1899, filed with the county clerk a verified statement setting forth the particular grounds of such contest. Upon the hearing thereof the superior court found that from the first day of January, 1893, until subsequent to the first day of January, 1895, the appellant was an inhabitant, resident, and elector of the county of Santa Clara, and was not an inhabitant, resident, or elector of the city and county of San Francisco; that he was not an elector of said city and county for five years next preceding the date of the election held on November 7, 1899, nor for five years next preceding the first Monday after the first day of January, 1900, and that he was not at any time during the years 1893, 1894, or 1895, until subsequent to the first day of April, 1895, an inhabitant or resident of San Francisco for a period of ninety days, and was not an elector of said city and county until after April 1, 1895, and thereupon held that he was not eligible to the said office of tax-collector and was not duly elected to said office,

and rendered judgment annulling and setting aside his said election and canceling the certificate of election issued to him. From this judgment the present appeal has been taken.

The charter of San Francisco was framed by a board of freeholders elected therefor, and was approved by the legislature January 26, 1899. (Stats. 1899, p. 241.) Section 1 of chapter V of article IV declares (p. 274): "There shall be a tax-collector of the city and county, who shall be an elector of the city and county at the time of his election, and who must have been such for at least five years next preceding such time." Under this provision of the charter, unless the candidate for the office has the qualifications thus named "at the time of his election," he is not capable of being elected thereto, and will not be entitled to hold the office even though he receive a majority of the votes cast at the election. The rule declared in *Searcy* v. *Grow*, 15 Cal. 118, that if a person is not eligible at the time the votes were cast for him he will not be entitled to hold the office by reason of becoming subsequently qualified, has never been modified in this state. In *Ward* v. *Crowell*, 142 Cal. 587, and in *State* v. *Van Beek*, 87 Iowa, 569, cited therein, the statute provided certain qualifications for *holding* the office, but none for rendering the candidate eligible to it.

The appellant, however, urges that the provision in the charter requiring him to have had such qualifications for five years next preceding the election is unconstitutional; that it is not competent for the legislature to prescribe any other qualifications for eligibility to an office than are prescribed in the constitution as the qualifications of an elector, and that, even if it be conceded that this power exists in the legislature, a municipality—which is but a subordinate creature of the legislature—has not such power.

The express declaration in section 1, article IV, of the constitution of this state, that "The legislative power of the state shall be vested in a senate and assembly," includes all the legislative power of the state whose exercise is not expressly prohibited to the legislature, or conferred upon some other body. In the face of this declaration there can be no implication of the absence or non-existence of such power, but whoever would claim that the power does not exist in any particular case, or has been improperly exercised, must point

out the provision of the constitution which has taken it away
or forbidden its exercise. ''The constitution of this state is
not to be considered as a grant of power but rather as a
restriction upon the powers of the legislature, and it is com-
petent for the legislature to exercise all powers not forbidden
by the constitution of the state, or delegated to the general
government, or prohibited by the constitution of the United
States.'' (*People* v. *Coleman*, 4 Cal. 46.[1])

It is not contended by the appellant that the constitution
contains any express inhibition upon the legislature against
prescribing qualifications for the officers whose appointment
or election it may authorize, but he contends that the designa-
tion in the constitution of the qualifications of certain officers
named therein creates an implication that in all other cases
no other qualification shall be required than those of an
elector. It may be admitted that the legislature can neither
increase nor diminish the qualifications which the constitution
has prescribed for eligibility to any of the offices created by
that instrument; but for all offices which the legislature may
authorize or establish, either by virtue of express authority
therefor in the constitution itself, or by virtue of its general
legislative authority, it may prescribe such qualifications as in
its judgment will best accord with public policy or subserve
the interests of those affected thereby. That it is. of public
advantage that an officer shall be acquainted with the duties
of his office needs no argument, and it is equally evident that
the interests of a community will be better understood and
subserved by one who has been identified with that community
for a reasonable period of time than by a stranger or by one
whose introduction therein has been of recent date. Whether
such qualifications shall be required, as well as their character
and extent, and the particular offices for which they shall be
required, are matters entirely of legislative policy. Such
legislation is frequently found upon the statute-book, and by
section 54 of the County Government Act itself the district
attorney is required to have been admitted to practice in the
supreme court of this state.

The authority to provide a municipal government for a
city is referable to the lawmaking power of the state, and the
enactment of a charter for a municipality is a legislative act.

---

[1] 60 Am. Dec. 581.

By section 6 of article XI of the constitution, the people have prohibited the legislature of this state from creating municipalities by special laws, and by section 8 of the same article they have given to any city having a certain population the right to frame a charter for its own government, which, if approved by the legislature, shall become the organic act of such city and supersede all laws inconsistent therewith. The people have thus withdrawn from the senate and assembly the legislative authority of the state in reference to municipal government for cities, to the extent that neither of those bodies can exercise any legislative authority in the enactment of a charter for such a municipality until after its provisions have been formulated and approved by the city itself in the manner prescribed by section 8 aforesaid, and have limited their legislative authority to the mere approval or rejection of the charter so formulated. The authority thus withdrawn from the legislature and given to the city is none the less a part of the law-making power of the state because it is contained in the article upon "Cities, Counties, and Towns," rather than in the article upon the "Legislative Department," and the act of the city in formulating the charter and determining the provisions to be included therein has the same force and authority as would a charter with the same provisions enacted by a legislature that was not restrained by any constitutional limitations. Its adoption by the city and approval by the legislature in the manner prescribed by said section is the mode prescribed by the constitution for its enactment, and has the same effect as that of a law which is passed by bill, under the provision of section 15 of article IV. It must be held, therefore, that the provisions of the charter of San Francisco in reference to qualifications for eligibility to the office of tax-collector have been established by the legislative authority of the state and are valid.

The finding of the court that the appellant had not been a resident or elector of San Francisco for the period of five years next preceding the date of the election is sustained by the evidence. Whether he had this qualification was an ultimate fact depending upon certain probative facts, and the determination of the superior court upon these probative facts, so far as such determination was made upon conflicting evidence, or by reason of inferences from established facts, must be ac-

cepted as correct. After it had been shown that he had acquired a domicile in the county of Santa Clara, the burden of proof was upon him to show that he had acquired another domicile in San Francisco. It appears from the bill of exceptions that he became a resident of San Jose in the latter part of 1892, and engaged in business therein at that time, and continued to carry on the same until the latter part of February, 1895. In March, 1893, he caused himself to be registered as a voter in that county, and was not registered as a voter in San Francisco until July 31, 1896. His wife accompanied him when he first went to San Jose, and they furnished and occupied a house on St. James Street in that city as their residence, and continued to live there until some time in the month of August, 1894, when they broke up housekeeping, and he went to live at another house on North Fifth Street, where he continued to live until the latter part of February, 1895. He packed up the furniture of their house on St. James Street and stored it in the basement of the house on North Fifth Street, where it remained until he left San Jose. His wife was troubled with asthma, and found the climate of San Jose unfavorable to her health, and when they broke up housekeeping she went to the house of his father in San Francisco and occupied a room there for a while. As stated by her in her testimony: ''Mr. Scott had some affairs to settle up his business, and he did n't like to leave me in the city alone, and as I was ill he thought the proper place for me was his parents' home, and so I stayed with them and occupied the front room with Mr. Scott.'' The bill of exceptions does not show how long she remained at his father's house, or what amount of time she passed there, but during the summer months she visited several mountain resorts for her health, and from them appears from time to time to have returned to her husband at San Jose. She also testified that during the period between her going to his father's house and January 1, 1895, she visited San Jose at least once a week, and sometimes oftener, and at times remained there two or three days, during which she stayed with her husband at the house on North Fifth Street where he was living. A witness who was a housemaid at this place until nearly the end of 1894 testified that the appellant and his wife lived there almost continuously during the time that she was there. The business of the appellant

CXLV. Cal.—44

required him to visit San Francisco occasionally after he went to North Fifth Street to live, and when he made such visits he would go to his father's house to see his wife, if she was then in that city, and at times he would pass the night there. He did not, however, take any house for himself in San Francisco until February, 1895, after he had closed out his business in San Jose. He then took a house on Haight Street and shipped his furniture to that place, and went there with his wife to live. Under this evidence the court was justified in finding that he did not become a resident of San Francisco prior to February, 1895.

There was evidence before the court that when the appellant broke up housekeeping at San Jose, it was with the purpose of making San Francisco his place of residence, and many declarations by him of such intention were received in evidence; and it is urged in support of the appeal that as the domicile or residence of a person depends upon the intention with which he selects his place of abode, the court should have held that this evidence of intention, coupled with his wife's taking up her abode at his father's house, in pursuance of the agreement to that effect, and his subsequent removal to San Francisco, made him a resident of that city in August, 1894. The defect in this argument is, that however strong his intention may have been, it was not accompanied or followed by any immediate execution. These declarations all looked to the future, and were merely indicative of a purpose, but were not expressions giving character to the performance of an act. Declarations of the intention with which an act is done may illustrate the character of the act as a part of the *res gestæ* (*Wright* v. *Boston,* 126 Mass. 161; Code Civ. Proc., sec. 1850), but are entitled to but little, if any, consideration when made either as a narration of a past act or as indicating the purpose with which an act is to be done in the future. The residence of a person will not be affected by such declaration until the intention is carried into effect by the completed act.

"A change in the domicile of a person cannot be effected by an intention in the mind to make this change unless it is accompanied by an actual change in the place of abode." (*Pickering* v. *Cambridge,* 144 Mass. 244.) "The residence can be changed only by the union of act and intent." (Pol. Code, sec. 52 [7].) "The mere intention to acquire a new residence

without the fact of removal avails nothing; neither does the fact of removal without the intention." (Pol. Code, sec. 1239 [9]. See, also, *State* v. *Frest,* 4 Harr. (Del.) 558; *Murphy* v. *Hunt,* 75 Ala. 438; *Foss* v. *Foss,* 58 N. H. 283.)

We advise that the judgment be affirmed.

Cooper, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.

                Henshaw, J., McFarland, J., Lorigan, J.