[Civ. No. 4926. First Appellate District, Division One.—July 13, 1925.]

## ROBERT JOHNSTON, Appellant, v. KATE L. BENTON et al., Respondents.

[1] PLACE OF TRIAL—ORDER GRANTING MOTION—EVIDENCE—APPEAL.— On this appeal from an order changing the place of trial of an action to the county of the residence of one of the defendants, the evidence is sufficient to sustain the order appealed from.

[2] ID.—ENLISTMENT IN MILITARY SERVICE—RESIDENCE.—The domicile of a person is in no way affected by his enlistment in the civil, military or naval service of his country; and he does not thereby abandon or lose his domicile which he had when he entered the service nor does he acquire one at the place where he serves; and the fact of his being on military duty does not preclude him, if he so desires, from establishing residence where he is stationed.

[3] ID.—RESIDENCE—INTENTION.—The question of whether a person has changed his residence from one place to another must depend largely upon his intention, and that intention is often manifested by the purpose that impelled him in taking up a new place of abode.

[4] ID.—INTENTION—EVIDENCE.—Whenever the question of the intention of a person is at issue, it may be proved by the direct testimony of such person, whether he is a party to the action or not.

[5] ID.—EVIDENCE—AFFIDAVIT OF PARTY.—A person may "live" at a place and still not be a resident thereof in the legal sense of that

---

2.  See 9 R. C. L. 551.
3.  See 9 Cal. Jur. 834; 9 R. C. L. 542.
4.  See 9 Cal. Jur. 841.

term; and the affidavit of a defendant in which he states that he is a resident of a particular county must be considered, on a motion for change of place of trial to that county, in corroboration of his oral testimony because it is the statement of a probative fact, to which he is qualified to testify.

[6] ID.—RESIDENCE—CONCLUSIONS—AFFIDAVITS.—The bare statement of a plaintiff resisting a motion for change of place of trial, or of a third party, as to a defendant's residence, no matter how unqualifiedly made, is but a conclusion, the affiant knowing nothing of the defendant's intention with respect to the establishment of his place of residence; and this rule applies with equal force to an affidavit made by the mother of the defendant in which she states in substance that her son "never changed his residence" from, and "at all times resided" in, the county to which the action was asked to be removed.

[7] ID.—REGISTERING TO VOTE — EFFECT UPON RESIDENCE. — The fact that a defendant moving for a change of place of trial of an action to a county in which he claims to reside, did not register to vote in that county is not important, where he never registered to vote anywhere, and the matter of voting was a right which he might, or might not, exercise as he saw fit.

[8] ID.—CONFLICTING EVIDENCE—PROVINCE OF TRIAL COURT—FINDING—APPEAL.—On this appeal from an order changing the place of trial of an action to the county of the residence of one of the defendants, the matters relied upon by the plaintiff as furnishing reasons for holding that said defendant was a resident of the county where the action was instituted do no more than raise a conflict in the evidence upon the question of said defendant's place of residence, which conflict was one to be resolved by the court in which the action was instituted and to which the motion was addressed, and the finding of the trial court thereon will not be disturbed.

---

(1) 40 **Cyc.**, p. 166, n. 69.   (2) 19 **C. J.**, p. 418, n. 95, p. 419, n. 96.   (3) 19 **C. J.**, p. 406, n. 99, p. 423, n. 39.   (4) 19 **C. J.**, p. 428, n. 70, 71; 22 **C. J.**, p. 611, n. 78.   (5) 19 **C. J.**, p. 436, n. 42; 34 **Cyc.**, p. 1655, n. 87.   (6) 19 **C. J.**, p. 427, n. 66; 22 **C. J.**, p. 616, n. 88; 40 **Cyc.**, p. 166, n. 69.   (7) 19 **C. J.**, p. 437, n. 50.   (8) 4 **C. J.**, p. 845, n. 87, p. 846, n. 91.

APPEAL from an order of the Superior Court of the City and County of San Francisco granting motion for change of place of trial.   George H. Cabaniss, Judge.   Affirmed.

---

6.   See 25 **Cal. Jur.** 903.

8.   See 25 **Cal. Jur.** 911; 27 **R. C. L.** 827.

The facts are stated in the opinion of the court.

Wallace & Ames for Appellant.

Dozier, Kimball & Dozier for Respondents.

KNIGHT, J.—An appeal by plaintiff Robert Johnston from an order granting defendants' motion for a change of place of trial from the city and county of San Francisco to Shasta County, upon the ground of the residence of the defendants. The action is based upon an alleged agreement to pay real estate commissions to plaintiff's assignor. The single question involved relates to the residence of the defendant John W. Benton, appellant having made no point on this appeal as to the residence of the other defendants Kate L. and Harry L. Benton, who are, respectively, the mother and the brother of defendant John W. Benton. The evidence offered in support of the motion consisted of an affidavit made by defendant John W. Benton to the effect that for more than twenty years immediately preceding, and at the time of the commencement of this action, he was a resident of Shasta County, which affidavit was supplemented by his oral testimony given at the time of the hearing of the motion and by the affidavit of Benton's mother, Kate L. Benton, in which she stated in substance that although her son had been absent in the military service he had "never changed his residence" from Shasta County and had "at all times resided therein." It appears from the testimony given by the defendant John W. Benton that, at the time of the hearing of this motion, he was twenty-seven years of age, and an officer in the United States Army, with rank of lieutenant; that he was born and reared in the county of Shasta; that in 1917 he entered the military service of the United States, was discharged in February, 1919, returned to Shasta County, and, after spending some time in Shasta and Siskiyou Counties, went to San Francisco; that in July, 1920, he visited Reno, Nevada, remained there until the early part of the following September, then returned to San Francisco, where, on September 5, 1920, he re-entered the army, being attached to the aviation branch of the service. After spending a few days in San Francisco, he again went to Reno for two weeks, then returned to San Francisco and obtained a

leave of absence for thirty days, which time he spent visiting in Reno and San Francisco. In October, 1920, he was assigned to duty at Riverside, California, was afterward transferred to Marsh Field, and from there to San Antonio, Texas, and then to Hampton, Virginia. In September, 1921, he was transferred back to San Francisco. Later, the exact date not appearing, but apparently in July, 1923, he was sent to the Panama Canal Zone, where he remained until December, 1923. He was then ordered back to the Presidio, San Francisco, on account of an impaired condition of one eye, and was assigned to domestic duty for one year.

This action was commenced on November 22, 1923, one month prior to his arrival from Panama. At the time Benton testified in support of this motion he had been living for about two months with his wife and two children at the Presidio, occupying a house maintained by the government on the military reservation. He testified that during his entire service in the army he had always lived in homes maintained by the government; that he had not intended to, and did not in fact, establish a residence in San Francisco, or any other place except Shasta County; that he had never given up his residence there, had always regarded that county as his residence, and that he intended to return there to .enter business in the event that he was invalidated from further military service; that he had never at any time registered as a voter. It further appears from the record before us that the estate of defendant's father, at the time said motion was heard, was pending settlement in Shasta County and that it was the owner of certain valuable timber lands, including a mill site, in that county, in which these defendants were interested. In reference to the value and extent of those timber holdings, plaintiff alleges in his complaint that a purchaser agreed to pay the sum of $30,000 for certain timber and water rights thereof. Benton further testified that he had been "brought up" in the timber and timber business and knew something of forestation, and that if he were compelled to retire from the army he intended, as above stated, to return immediately to Shasta County to follow that business. Benton's mother and brother were also, at the time of the commencement of this action, residents of Shasta County and had been so for many years.

[1] We are of the opinion that the evidence above set forth abundantly sustains the order appealed from.

[2] It is well settled that the domicile of a person is in no way affected by his enlistment in the civil, military or naval service of his country; and he does not thereby abandon or lose his domicile which he had when he entered the service nor does he acquire one at the place where he serves (9 R. C. L. 551; *Stewart* v. *Kyser,* 105 Cal. 459 [39 Pac. 19]; *People* v. *Holden,* 28 Cal. 124; *Estate of Gordon,* 142 Cal. 125 [75 Pac. 672]; *Percy* v. *Percy,* 188 Cal. 768 [207 Pac. 369]). True, the fact of his being on military duty does not preclude him, if he so desires, from establishing residence where he is stationed (*Percy* v. *Percy, supra*); but the uncontradicted evidence here is that such was not Benton's desire—that he never had any intention of doing so.

[3] The question of whether a person has changed his residence from one place to another must depend largely upon his intention, and that intention is often manifested by the purpose that impelled him in taking up a new place of abode. [4] Whenever the question of the intention of a person is at issue, it may be proved by the direct testimony of such person, whether he is a party to the action or not (*Gilmour* v. *North Pasadena Land Co.,* 178 Cal. 6 [171 Pac. 1066]; *Horton* v. *Winbigler,* 175 Cal. 149 [165 Pac. 423]; *Runo* v. *Williams,* 162 Cal. 444 [122 Pac. 1082]; *Byrne* v. *Reed,* 75 Cal. 277 [17 Pac. 201]).

The testimony given by Benton to the effect that he never intended to abandon Shasta County as his place of residence is undisputed; and it is likewise uncontradicted that he did not, of his own volition, select any particular military station as a place of abode, but that he was required to live in those different places temporarily, under military orders which were subject to change at any time and which were, in fact, changed several times so as to transfer him from one military station to another. Benton knew better than any other person whether he had established a residence at any other place than Shasta County, for he knew or it must be assumed that he knew what his intentions were with respect to becoming or not becoming a resident in a legal sense of the place to which he moved. The fact that he "lived" in San Francisco did not by any means prove that he was a resident thereof. [5] A person may "live" at a place and still

not be a resident thereof in the legal sense of that term (*O'Brien* v. *O'Brien,* 16 Cal. App. 103 [116 Pac. 692]; *McKune* v. *McKune,* 48 Cal. App. 204 [191 Pac. 958]). And in this connection it may be added that Benton's own affidavit in which he stated that he was a resident of Shasta County must be considered in corroboration of his oral testimony because it was the statement of a probative fact, abont which he was qualified to testify (*O'Brien* v. *O'Brien, supra*).

The two points developed by the counter-showing of appellant before the trial court, and upon which he mainly relies as proof to establish the fact that Benton was not a resident of Shasta County, were that four years prior to the commencement of this action Benton joined a fraternal society in San Francisco, and, in doing so, stated in his application for admission thereto that his residence was in San Francisco; and, secondly, that, in June, 1923, prior to his departure for Panama, and approximately five months before this action was filed, he signed a power of attorney, prepared by his attorney, containing the recital "I, John W. Benton, of the City and County of San Francisco . . . " Aside from the question of the remoteness of these transactions from the time this action was commenced, which, we think, must be taken into considcration, the record shows that these two matters were fully and evidently satisfactorily explained to the trial court. In reference to the application for admission to said society, Benton testified that he told his friend who prepared and sponsored his application that he was not a resident of San Francisco, but that his friend advised him that it was "merely a technicality on jurisdiction," and would have nothing to do with his residence; and regarding the recital in the power of attorney it was proved that the same was inserted by the attorney who prepared the document, without instructions or suggestion from Benton in that regard; and, moreover, the recital relicd on was not a declaration that Benton was a resident of San Francisco, its terms fairly indicating that it was intcnded merely to designate the city in which Benton was living at the time said document was prepared and signed. [6] The counter-affidavit of appellant to the effect that Benton was a resident of the city and county of San Francisco and had no place of residence in Shasta County, was of little value, for the

reason that the bare statement of a plaintiff or of a third party, as to a defendant's residence, no matter how unqualifiedly made, is but a conclusion, the affiant knowing nothing of the defendant's intentions with respect to the establishment of his place of residence (*O'Brien* v. *O'Brien, supra; Bernou* v. *Bernou,* 15 Cal. App. 341 [114 Pac. 1000]). This rule applies with equal force against the affidavit made by Kate L. Benton, as to her son's residence.   [7]   The fact that Benton did not register to vote in Shasta County is not important.   It will be noted that he never registered to vote anywhere.   The matter of voting was a right which he might, or might not, exercise as he saw fit (*Estate of Gordon,* 142 Cal. 261 [41 Pac. 472]).

[8]   In any event the matters relied upon by appellant as furnishing reasons for holding that Benton was a resident of San Francisco do no more than raise a conflict in the evidence upon the question at issue, to be resolved by the court in which the action was instituted and to which the motion was addressed, and therefore the finding of the trial court thereon, according to the well-established rule, will not be disturbed (*Sourbis* v. *Rhoades,* 50 Cal. App. 98 [194 Pac. 521]; *Bradley* v. *Davis,* 156 Cal. 267 [104 Pac. 302]; *Bowers* v. *Modoc Land Co.,* 117 Cal. 50 [48 Pac. 979]; *Lakeshore Cattle Co.* v. *Modoc Land Co.,* 108 Cal. 261 [41 Pac. 472]).

The order appealed from is affirmed.

Tyler, P. J., and Cashin, J., concurred.