[S. F. No. 17393. In Bank. Sept. 8, 1947.]

ISAAC ISLAND, Plaintiff and Appellant, v. FIREMAN'S FUND INDEMNITY COMPANY et al., Defendants and Appellants.

542

James G. Quinn, Jr., and John J. Healy, Jr., for Plaintiff and Appellant.

Bronson, Bronson & McKinnon and E. H. Chapman for Defendants and Appellants.

EDMONDS, J.—Isaac Island sued Fireman's Fund Indemnity Company as a judgment creditor of J. C. Cave, Sr., its insured. The principal defense to the action is that the automobile which caused the injuries for which damages were awarded was not covered by the policy. Following a judgment in favor of Island, a new trial was granted. He has appealed from that order and the insurer is prosecuting a cross-appeal from the judgment.

The insurer issued its standard form of automobile policy to Cave, Sr., and the accident occurred during the policy period. It appears without question that in an action brought by Island against J. C. Cave, Sr., he recovered a judgment for personal injuries. The judgment became final and is wholly unsatisfied.

The answer to the complaint stating these facts pleaded the provisions of the policy which insured Cave, Sr., against

liability because of the operation by him of a certain Ford automobile. The contract extended the coverage to any other automobile operated by him, but upon the specific condition that the additional insurance should not apply "(a) to any automobile owned in full or in part by, registered in the name of, hired as part of a frequent use of hired automobiles by, or furnished for regular use to, the named insured or a member of his household other than such chauffeur or servant. . . ." Adopting the language of the policy, the answer alleged that Island was injured by reason of the operation of an automobile driven by Cave, Sr., and furnished for regular use to him by J. C. Cave, Jr., his son and a member of his household. At the time of the accident, the insurer continued, the automobile owned by the son was, and had been, in regular use by the insured.

It is conceded that the accident in which Island was injured occurred while J. C. Cave, Sr., was driving the automobile owned by his son. At that time the son was in the armed forces. When he entered upon his military duties, about four months before the date of the accident, the son and his wife were living at the home of his father.

J. C. Cave, Sr., called as a witness by the insurer, told the jury that at the time the son went into the Army "he left the car there, with me; we had a double garage; and he asked me if I would drive it once in a while and keep the battery up,—charged." In reply to a question as to his compliance with his son's request, the witness said, "I drove his car a few times; I don't recall how often; . . . I used the car 15 or 20 times while he was away. . . . He was away about eight months." Asked as to whether he used the son's car with about the same frequency as his own, Cave, Sr., replied, "No; I didn't use it that often." He also declared that he used his car "to drive to and from work" and his son's car "about the same."

Counsel for the insurer asserted that he was surprised by this testimony and he produced an affidavit which the witness identified as one signed and sworn to by him in June, 1944, about 15 months after the accident occurred. Asked as to how much of the statement was being relied upon to impeach the witness, the insurer's attorney replied, "The entire document." Obviously for the purpose of having a clear understanding as to the use to be made of the statement, Island's attorney then asked: "Before you start in, . . . do I under-

stand . . . that you are attempting to impeach Mr. Cave— is that right?'' The answer to this question was: ''I am going to do it. It is no attempt.'' An objection to ''any attempt to impeach this witness'' was overruled by the trial judge who stated: ''I will permit counsel to impeach his own witness by the statement contained in the document on the ground of surprise.''

The affidavit was then received in evidence and read to the jury. After the statement by the insured that, at the time of the accident, he and his wife resided in Oakland, the affidavit continued as follows: ''My son and his wife lived with us off and on since we have been at the address. His name is John C. Cave, Jr. He joined the army on Dec. 16, 1942. He owned a 1935 Ford . . . sedan which he left with me when he went into the services. He and his wife lived with us for about a year just before he went in to the services. He left the car with me to drive it once in a while to keep the battery up and see that the car was in condition. I drove the car about 15 days per month to work or just about as much as I drove my own car.''

Other evidence tending to prove statements by Cave, Sr., inconsistent with his testimony, was given by James M. Hamlin, claims manager of the insurer. According to Hamlin, he called on Cave, Sr., two or three months after the accident occurred and took a written statement from him. During the examination of Hamlin, counsel for Island objected to the testimony identifying the document upon the ground that it constituted ''an attempt . . . to impeach a witness that they brought here.'' Following some argument by counsel, the trial judge remarked: ''It seems to me . . . that before you can introduce this statement by way of impeachment, you would have to lay a foundation for it, calling it to the witness's attention.''

The insured, recalled as a witness for the insurer, admitted that he had signed the statement identified by Hamlin. It was then offered in evidence. Counsel for Island objected to the statement as ''a further attempt upon the part of the defendant to impeach the witness produced by the defendant.'' The ruling upon the objection was that the portion of the statement relating to the extent of the use by the insured of his son's automobile would be admitted in evidence. Island's attorney then asked whether that portion of the statement was received ''solely for the purpose of impeachment?'' The

trial judge replied: "That is true." A further question was asked by counsel: "And the same is true as to your Honor's ruling on the first document?" The judge answered: "I take it that was the purpose of the offer." The attorney for the insurer took no part in this colloquy and, as soon as it was concluded, read to the jury from the insured's statement the following: "He left the car with me to drive it once in a while to keep the battery up and see that the car was in condition. I drove the car about 15 days per month to work or just about as much as I drove my own car."

At the request of Island, the court instructed the jury: "In this case, evidence was received tending to show that the witness Cave had made statements, with reference to his use of the automobile involved in the accident, inconsistent with his testimony upon the witness stand. Such testimony was admitted solely for the purpose of impeachment, in order to assist you in determining what credibility should be given to his present testimony. It should not be considered by you as evidence affirmatively establishing the existence or truth of the facts stated in such prior statements."

Following the verdict of the jury in favor of Island and the entry of judgment thereon, the insurer made a motion for a new trial. In granting this motion, insufficiency of the evidence to support the judgment was not specified as a ground for the decision, and it is conceded that the only question to be considered upon the appeal from the order is whether this instruction should have been given.

Island takes the position that the motion should not have been granted because the affidavits of Cave, Sr., were, by stipulation between counsel and the court, offered and admitted solely for the purpose of impeachment after the insurer stated it had been surprised by his testimony. Furthermore, says Island, even if there had not been this understanding, the instruction was proper as the affidavits were hearsay and were inadmissible against him except for the purpose of impeachment.

The insurer contends that the evidence of Cave's prior declarations was not offered solely for impeachment and for no other purpose. Furthermore, it asserts, counsel have no power to limit the effect of evidence, and the evidence is admissible as a declaration against interest without regard to the purpose for which it is offered. The company insists that

Island stands in exactly the same position as the insured; his rights are no greater nor less than those of Cave, Sr., and in his cause of action he is bound by the terms and limitations of the policy.

The judgment is subject to attack because of the insufficiency of the evidence, says the company in support of its appeal, although the order granting a new trial was not made upon that ground. Pointing to the allegations of the complaint, the insurer contends that the defense, reserved in the exclusionary clause of the policy, was properly presented to the trial court. There was a conflict in the evidence as to the issue of regular use, the insurer admits, but it asserts that there is adequate testimony to prove ownership of the automobile involved in the collision by a member of the insured's household. Island takes the position that the insurer did not properly present the defense of ownership of the automobile involved in the accident by a member of the household, and, in any event, the son did not come within that category while serving in the armed forces.

 The court is not bound by the declarations of counsel that evidence is admitted for a limited purpose so as to preclude the drawing of deductions from it other than those suggested by the terms of the offer, unless injustice would follow to the opposite party by permitting such inferences. (*Meridian, Ltd.,* v. *San Francisco,* 13 Cal.2d 424, 490 [90 P.2d 537, 91 P.2d 105]; *Isenberg* v. *Sherman,* 214 Cal. 722, 732 [7 P.2d 1006]; *Sears* v. *Starbird,* 78 Cal. 225, 230 [20 P. 547]; *Sill* v. *Reese,* 47 Cal. 294, 340; *People* v. *Westcott,* 86 Cal.App. 298, 313 [260 P. 901]; see 10 Cal.Jur. 816 et seq.) However, in *Sears* v. *Starbird, supra,* at page 230, and *People* v. *Westcott, supra,* at page 313, the court stated that this rule would not be applied when there was an "express understanding between counsel and the court that evidence is to be limited to a particular matter, . . . ." (See 10 Cal.Jur. 816; 23 Cal.Jur., Stipulations, § 7, pp. 816 et seq.)

 The present record shows such an understanding. During the course of the trial, answering the inquiry of Island's counsel as to whether the insurer was attempting to impeach Cave, Sr., by his affidavit, the attorney replied: "I am going to do it. It is no attempt." And when the other affidavit was introduced in evidence, counsel for Island and the court each expressly limited the evidentiary purpose of the documents. Counsel for the insurer, by his failure to

then take a contrary position, agreed that the affidavits were offered solely for the purpose of impeaching the prior testimony of Cave, Sr. Under these circumstances, the insurer is in no position to complain that the instruction limiting the effect of the evidence was erroneous.

■ Turning to the cross-appeal of the insurer from the judgment, the contention of Island that the special defense as to the son's status as a member of the insured's household was not pleaded nor relied upon by the insurer in the trial court is not supported by the record. The insurer's answer quoted the exclusionary clause in full and alleged that the automobile involved in the accident was "furnished for regular use to J. C. Cave, Sr., by a member of his household, to wit, his son . . ." and that said accident did not come "within the purview of the coverage afforded by said policy of insurance." Furthermore, one of the grounds included in the insurer's motion for a directed verdict was "that the ownership of the car that he was operating was by a member of his [Cave, Sr.'s] household."

■ As contended by the insurer, the domicile or legal residence of a person is in no way affected by his enlistment in the armed forces in the absence of a contrary intent. (*Percy* v. *Percy*, 188 Cal. 765, 768 [207 P. 369]; *Estate of Gordon*, 142 Cal. 125 [75 P. 672]; *Stewart* v. *Kyser*, 105 Cal. 459 [39 P. 19]; *Johnston* v. *Benton*, 73 Cal.App. 565, 569 [239 P. 60]; *Kinsel* v. *Pickens*, 25 F.Supp. 455; 148 A.L.R. 1414.) But these decisions are not decisive upon the question as to whether military service excludes the enlistee from being a "member of the household" within the meaning of that term as used in an insurance policy.

One of the definitions of the word "household" given in Webster's New International Dictionary is, "Those who dwell under the same roof and compose a family; a domestic establishment." The courts have noted that the term may have different meanings under different circumstances. (*Moore Shipbuilding Corp.* v. *Industrial Acc. Com.*, 185 Cal. 200, 207 [196 P. 257, 13 A.L.R. 676]; *Collins* v. *Northwest Casualty Co.*, 180 Wash. 347, 352 [39 P.2d 986, 97 A.L.R. 1235]; *Lumbermen's Mutual Casualty Co.* v. *Pulsifer*, 41 F.Supp. 249.) In one of these cases it was said that the word "is variously used to designate people, generally, who live together in the same house, including the family, servants, and boarders, or it may be used as including only members of the

family relation. It is probable that the two terms are coupled together in this statute to indicate that they are used synonymously, the 'family' to include only those of the household who are thus intimately associated, the 'household' to exclude those of the family not living in the home." (*Moore Shipbuilding Corp.* v. *Industrial Acc. Com., supra,* at p. 207.) A federal court declared: ". . . Whether the term 'household' or 'family' is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a 'collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness.'' In that case, it was held that when two families came together temporarily, "Each family retained its own organization under its own head and did not merge to make one family or one household in any such way as the word is used in the policy." (*Lumbermen's Mutual Casualty Co.* v. *Pulsifer, supra,* at pp. 251, 252.)

■ A cardinal rule of interpretation is that, where a provision of an insurance policy is susceptible of two constructions, it should be construed most strongly in favor of the policyholder. (*Culley* v. *New York Life Ins. Co.,* 27 Cal.2d 187, 194 [163 P.2d 698]; *Baine* v. *Continental Assur. Co.,* 21 Cal.2d 1, 5 [129 P.2d 396, 142 A.L.R. 1253]; *Fageol T. & C. Co.* v. *Pacific Indemnity Co.,* 18 Cal.2d 731, 747 [117 P.2d 661].) ■ This rule requires the conclusion that Cave, Jr., was not a member of his father's household at the time of the happening of the accident to Island. If the insurer intended to restrict its coverage to the extent of its defense in the present case, it should have used language clearly stating that purpose.

The order granting the insurer's motion for a new trial is reversed and the judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Schauer, J., Traynor, J., and Spence, J., concurred.