TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-1008 |
| of | : | |
| | : | March 5, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

GROSSMONT EDUCATION ASSOCIATION and LINDA PIERCE have requested this office to grant leave to sue in quo warranto upon the following:

ISSUES OF FACT OR LAW

1.      Is residence within a high school district a qualification for election to the governing board of the district?

2.      Did defendant comply with the residence qualification for election to the governing board of a high school district?

3.      Is continued residence within a high school district required during the entire term of office of a governing board member?

4.      Has defendant complied with the residence requirement for continued service as a governing board member of a high school district?

CONCLUSIONS

1.      Residence within a high school district is a qualification for election to the governing board of the district.

2.      Whether defendant complied with the residence qualification for election to the governing board of a high school district presents substantial issues of fact and law.

3. Continued residence within a high school district is required during the entire term of office of a governing board member.

4. Whether defendant has complied with the residence requirement for continued service as a governing board member of a high school district presents substantial issues of fact and law.

## PARTIES

GROSSMONT EDUCATION ASSOCIATION and LINDA PIERCE ("relators") contend that NADIA Q. DAVIES ("defendant") is unlawfully serving as a member of the governing board of the Grossmont Union High School District in the City of La Mesa, County of San Diego ("District").

## MATERIAL FACTS

Defendant was elected on November 5, 1996, to the governing board of the District for a term of four years.

### A. Allegations as to Residence at the Time of Election

Relators allege that for purposes of election to the District's governing board defendant listed a residence (the "Lake Murray duplex") that was not in fact defendant's domicile; that defendant's goddaughter and others resided at the Lake Murray duplex as tenants of a third party; and that defendant continued to be domiciled at the time of her election at her home (the "Caminito de la Taza house") located outside of the District.

Defendant alleges that at all times during her candidacy and at the time of her election she resided at the Lake Murray duplex within the District; that on July 8, 1996, she completed a voter registration form listing her residence as the Lake Murray duplex; that on August 21, 1996, she completed a United States Post Office change of address form listing her new residence as the Lake Murray duplex; and that "during the above-described time, such was my domicile and residence and the place at which I intended to remain, at which my habitation was fixed, and to which I intended to return whenever absent or not called elsewhere for labor or other special or temporary purposes."

Mike Paslay alleges that in July of 1996 defendant moved into the Lake Murray duplex; that he is the primary leaseholder at that address; that he was assigned to a project site in Paso Robles where he spent most of his weekdays until November of that year; that defendant resided there during that period; that she received telephone calls, mail, and visitors, and moved personal belongings, bedding, clothing, and some furnishings into the premises; that she left the premises late in November.

### B. Allegations as to Residence During Term of Office

Relators allege that defendant's domicile remains outside of the District at her Caminito de la Taza house and that her "move" to the Lake Murray duplex and thereafter to a condominium

on Baltimore Drive ("Baltimore Drive condominium") did not change defendant's domicile; that the Baltimore Drive condominium is owned by defendant's adult daughter; that the deed of trust for the condominium provides in part that the daughter, as owner, will "keep the property available for her exclusive use and enjoyment at all times and shall not subject the property . . . to any other shared ownership arrangement or give . . . any other person any control over the occupancy or use of the property"; and that following a school board meeting on February 6, 1997, defendant was observed returning to her Caminito de la Taza house late that night.

A neighbor recites according to his direct observation that defendant has during the entire period of her membership on the District's governing board continued to reside at her Caminito de la Taza house.

Defendant alleges that she moved to the Baltimore Drive condominium within the District in January of 1997; that the telephone and electric service at the condominium are in her name; and that she possesses a resident identification card issued by the condominium association.

ANALYSIS

In deciding whether to grant leave to sue in the name of the People of the State of California, we consider initially whether there exists a substantial question of law or fact which requires judicial resolution, and if so, whether the proposed action in the nature of quo warranto would serve the overall public interest. (80 Ops.Cal.Atty.Gen. 242, 242-243 (1997).)

1.      Residence Qualification of a Candidate for Office

The first issue raised herein is whether residence within the District is a requisite qualification for a candidate seeking office as a member of the District's governing board. In this regard, Education Code section 35107, subdivision (a), provides as follows:

"Any person, regardless of sex, who is 18 years of age or older, a citizen of the state, a resident of the school district, a registered voter, and who is not disqualified by the Constitution or laws of the state from holding a civil office, is eligible to be elected or appointed a member of the governing board of a school district without further qualifications."

Hence, if defendant did not qualify as a resident of the District at the time of her election in November of 1996, she was not eligible to become a member of the District's governing board.

Whether a "person declared elected was not eligible for the office" may be determined at a trial or evidentiary hearing. (*Enterprise Residents etc. Committee* v. *Brennan* (1978) 22 Cal.3d 767, 774; cf. Elec. Code, § 16100, subd. (b).) In 13 Ops.Cal.Atty.Gen. 127, 128 (1949), we concluded that an individual who was not a resident of the school district at the time of her election "was not eligible for election and may not retain office as a member of the board of trustees of the school district."

2.      Compliance With Residence Qualification for Election

The second issue presented is whether sufficient facts have been alleged which, if true, would support a finding that defendant failed to comply with the requirement of residence within the District at the time of her election. In our view, relators' allegations present substantial questions of fact and law as to defendant's domicile at the time of her election.

"Residence" for purposes of Education Code section 35107 means "domicile," a place of physical presence coupled with an intention to make that place one's permanent home; a person may only have one domicile at any given time. (See *Walters* v. *Reed* (1988) 45 Cal.3d 1, 7; *Smith* v. *Smith* (1955) 45 Cal.2d 235, 239; *Fenton* v. *Board of Directors* (1984) 156 Cal.App.3d 1107, 1113; 79 Ops.Cal.Atty.Gen. 21, 25-26 (1996); 73 Ops.Cal.Atty.Gen. 197, 208-209 (1990); 72 Ops.Cal.Atty.Gen. 8, 11-12 (1989).) A domicile is not lost until a new one is acquired. (Gov. Code, § 244, subd. (c); *Walters* v. *Weed*, *supra*, 45 Cal.3d at 7; *DiMiglio* v. *Mashore* (1992) 4 Cal.App.4th 1260, 1268; 72 Ops.Cal.Atty.Gen., *supra*, 12.)

Defendant concedes that until 1996 her domicile was at her Caminito de la Taza house located outside the District and that she and her husband continue to spend "long hours there," since it has become their "office." She asserts that in June or July of 1996, she changed her domicile to the Lake Murray duplex in order to help care for her goddaughter. She paid her rent in cash but did not have a rental agreement.

Relators have established defendant's domicile outside the District prior to her election on November 5, 1996. The issue to be resolved is whether defendant has established a change of domicile to a place within the District prior to her election. The burden is upon defendant in such circumstances. (See *DiMiglio* v. *Mashore*, *supra*, 4 Cal.App.4th at 1268-1269.) Defendant's claim that her former domicile is now her "office," that her change of domicile to the Lake Murray duplex was for the limited purpose of helping care for a goddaughter, and "[t]hat my husband and I, as a result of our business and lifestyles, maintain several fully furnished homes and have moved several times since 1990" present substantial questions of fact and law as to defendant's place of domicile since 1996, including at the time of her election.

3.      Residence Qualification During Term of Office

The third issue presented is whether defendant's residence within the District is required during her term of office as a member of the District's governing board. Government Code section 1770 provides in part:

"An office becomes vacant on the happening of any of the following events before the expiration of the term:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e) His or her ceasing to be an inhabitant of the state, or if the office be local and one for which local residence is required by law, of the district . . . for which the officer was chosen or appointed . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ." **Footnote No. 1**

Accordingly, it must be determined whether continued residence within the District is "required by law" during defendant's term of office as a member of the District's governing board. **Footnote No. 2** Education Code section 35107, subdivision (a), requires residence within the District as a condition of eligibility *for election or appointment* to a school district's governing board. While the statute does not refer explicitly to continued service on the board once elected or appointed, we have previously observed that in the absence of any statutory expression to the contrary, an election residence requirement remains during the entire term of office as a continuing qualification for holding the office. (79 Ops.Cal.Atty.Gen. 243, 245 (1996); 75 Ops.Cal.Atty.Gen. 287, 288 (1992).) Hence, if defendant failed at any time during her term of office to qualify as a resident of the District, her office became vacant upon such occurrence. (Gov. Code, § 1770.)

4.      Compliance With Residence Qualification for Term of Office

The fourth issue is whether defendant has complied with the residence requirement for purposes of continued service on the District's governing board. In our view, the material allegations in support of the application for leave to sue, considered in light of the paucity of defendant's showing to the contrary, present substantial issues of fact and law.

While defendant's claim of having her domicile at the Lake Murray duplex shortly after her election is subject to question as discussed above, so also is her claim of a change of domicile to the Baltimore Drive condominium. Title to the condominium is in the name of defendant's daughter, and the loan on the property does not allow defendant to have a shared ownership arrangement or control over the occupancy or use of the unit.

Moreover, there is an unexplained discrepancy between when defendant left the Lake Murray duplex and moved into the Baltimore Drive condominium. Defendant's claim that her Caminito de la Taza house, her acknowledged domicile until at least June of 1996, is now her "office," where she spends "long hours," presents substantial questions of fact and law as to defendant's domicile during her term of office.

PUBLIC INTEREST

As stated in *City of Campbell v. Mosk* (1961) 197 Cal.App.2d 640, 650, with respect to quo warranto applications: "The exercise of the discretion of the Attorney General in the grant of such approval to sue calls for care and delicacy. Certainly the private party's right to it cannot be absolute; the public interest prevails."

Generally, we have viewed the existence of a substantial question of fact or law as presenting a sufficient public purpose to warrant the granting of leave to sue; hence, leave to sue will be denied only in the presence of other overriding considerations. (80 Ops.Cal.Atty.Gen., *supra ,* 247.) We find no significant countervailing considerations herein. Rather, both the public and the District have an interest in the integrity of public office and in the qualifications of their officials.

Accordingly, the application for leave to sue in quo warranto is GRANTED.

\* \* \* \* \*

**Footnote No. 1**
A member of the governing board of a school district is the holder of a public office for purposes of Government Code section 1770. (See 73 Ops.Cal.Atty.Gen. 354, 356 (1990).)
**Footnote No. 2**
Education Code section 5090 provides in part: "Vacancies on school district governing boards . . . are caused by any of the events specified in Section 1770 of the Government Code. . . ."