TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

|  |  |  |
|---|---|---|
| | : | |
| OPINION | : | No. 99-104 |
| | : | |
| of | : | April 15, 1999 |
| | : | |
| BILL LOCKYER | : | |
| Attorney General | : | |
| | : | |
| ANTHONY M. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

GUY B. MEYERS has requested this office to grant leave to sue in quo warranto upon the following:

ISSUES OF FACT OR LAW

Is Lorraine Rollins unlawfully occupying the office of director of the Calaveras County Water District for the Fifth District?

CONCLUSION

Whether Lorraine Rollins is unlawfully occupying the office of director of the Calaveras County Water District for the Fifth District presents substantial issues of fact and law; it is in the public interest to grant leave to sue so that a judicial resolution of the issues presented may be obtained.

## PARTIES

GUY B. MEYERS ("relator") seeks a judicial determination of the validity of the actions taken by the directors of the Calaveras County Water District ("CCWD") on December 16, 1998, declaring his office as director for the Fifth District to be vacant and replacing him on February 10, 1999, by appointing Lorraine Rollins ("defendant").

## MATERIAL FACTS

On November 7, 1995, relator was elected to a four-year term as director of the CCWD for the Fifth District. On December 16, 1998, the directors of the CCWD voted to declare the office of director for the Fifth District to be vacant upon the ground that relator was no longer a resident of or domiciled in the Fifth District. On February 10, 1999, the directors appointed defendant to fill the declared vacancy in the office of the Fifth District.

Relator asserts that he was a resident of the Fifth District as of November 7, 1995, that he continues to be a resident of the Fifth District, and that it is his intent to remain a resident of the Fifth District. He declares that his driver's license bears a post office box mailing address in Valley Springs, Calaveras County, and that his vehicle registration shows the same mailing address. He further declares that his concealed weapons permit gives his address at a location on St. Andrews Street in Valley Springs and that he has received utility bills for that address. He further states that he is registered to vote in the Fifth District. Relator declares that he owns a business and "several pieces of real property in the Fifth District."

The Directors of the CCWD have presented evidence supporting their claim that relator's residence is located in the City of Lodi, San Joaquin County, including both a 1997 grant deed for the property and a trust deed executed in 1998 to secure a loan listing relator's residence as the Lodi property. Also presented are reports of witness interviews concerning relator's presence at the Lodi property and his absence from his claimed residence in Calaveras County.

ANALYSIS

The first issue to be resolved is whether relator's continued residence within the Fifth District is required during his term of office as a member of the CCWD's governing board. Under the County Water District Law (Wat. Code, §§ 30000-33901), a director for the Fifth District of the CCWD must be a "voter" within the Fifth District at the time of his or her election to the board (Wat. Code, § 30735). Accordingly, he or she must be a "resident" of the Fifth District (see Elec. Code, §§ 321, 359), which means that within the Fifth District must be that single "place in which his or her habitation is fixed, wherein the person has the intention of remaining, and to which, whenever he or she is absent, the person has the intention of returning" (Elec. Code, § 349, subd. (b); see 79 Ops.Cal.Atty.Gen. 243 (1996)).

We have previously determined that in the absence of any statutory expression to the contrary, a residence requirement for election remains as a condition to the continued right to hold office. (75 Ops.Cal.Atty.Gen. 26, 28 (1992).) Here, Water Code section 30508 provides a slight variation upon this requirement:

"If a director's place of residence, as defined in Section 244 of the Government Code, is moved outside district boundaries or outside the boundaries of that director's division where elected from a division, and if within 180 days of the move or of the effective date of this section the director fails to reestablish a place of residence within the district or within the director's division, it shall be presumed that a permanent change of residence has occurred and that a vacancy exists on the board of directors pursuant to Section 1770 of the Government Code."

Government Code section 244 in turn provides:

"In determining the place of residence the following rules shall be observed:

"(a) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she returns in seasons of repose.

"(b) There can only be one residence.

"(c) A residence cannot be lost until another is gained.

"(d) The residence of the parent with whom an unmarried minor child maintains his or her place of abode is the residence of such unmarried minor child .

"(e) The residence of an unmarried minor who has a parent living cannot be changed by his or her own act.

"(f) The residence can be changed only by the union of act and intent.

"(g) A married person shall have the right to retain his or her legal residence in the State of California notwithstanding the legal residence or domicile of his or her spouse."

Government Code section 1770 additionally states in part:

" An office becomes vacant on the happening of any of the following events before the expiration of the term:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e) His or her ceasing to be an inhabitant of the state, or if the office be local and one for which local residence is required by law, of the district, county, or city for which the officer was chosen or appointed, or within which the duties of his or her office are required to be discharged. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

In 81 Ops.Cal.Atty.Gen. 94, 97 (1998), we recently analyzed the meaning of "residence" as that term is used in Government Code section 1770:

". . . 'Residence' for purposes of Government Code section 1770 means 'domicile,' a place of physical presence coupled with an intention to make that place one's permanent home; a person may only have one domicile at any given time. (See *Walters* v. *Weed* (1988) 45 Cal.3d 1, 7; *Smith* v. *Smith* (1955) 45 Cal.2d 235, 239; *DeMiglio* v. *Mashore* (1992) 4 Cal.App.4th 1260, 1268; *Fenton* v. *Board of Directors* (1984) 156 Cal.App.3d 1107, 1113; 79 Ops.Cal.Atty.Gen. 21, 25-26 (1996); 73 Ops.Cal.Atty.Gen. 197, 208-209 (1990); 72 Ops.Cal.Atty.Gen. 8, 11 (1989).)"

It is readily apparent that substantial questions of fact and law exist as to whether relator's place of residence complies with the requirements of Water Code section 30508. If it does comply, he has the right to regain his office through quo warranto proceedings.

In 79 Ops.Cal.Atty.Gen. 21 (1996), we considered whether a quo warranto action should be filed where the mayor of the City of Parlier had been removed from office by the city council. The council declared the mayor's office vacant on the ground that he no longer resided in the city and appointed a replacement. We granted the mayor's application to sue in quo warranto to determine whether he had been unlawfully replaced. We stated:

"Applications for leave to sue in quo warranto normally involve a direct challenge to the right of a person to hold public office, usually on the ground that he or she has failed to meet the required qualifications for the particular office, such as a residency requirement. (73 Ops.Cal.Atty.Gen., *supra*, 200.) Here, the challenge is somewhat different in that it does not concern the qualifications of defendant, but rather those of the relator. Was relator subject to an ongoing residency requirement in holding the office of Mayor of Parlier, and if so, did he fail to maintain his status as a legal resident of the city?

"In 73 Ops.Cal.Atty.Gen. 197, *supra*, we determined that a quo warranto action was the proper remedy under circumstances parallel to those presented here. There a school personnel commissioner was removed from office by a school board for failing to maintain his residence within the school district. We granted leave to sue, since the current commissioner's title to the office was dependent upon the legitimacy of the board's prior determination that the office had become vacant. Our analysis relied primarily on the case of *Klose* v. *Superior Court* (1950) 96 Cal.App.2d 913. In *Klose*, the court stated:

" '. . . where [an] appointing power considers a vacancy in office to exist, it may appoint a successor, without proceedings to declare the vacancy to exist, and that when it does so appoint[,] the official succeeded may by quo warranto question whether there was any vacancy.' (*Id*., at p. 917.)" (*Id.*, at pp. 22-23.)

PUBLIC INTEREST

As a general rule, we have viewed the existence of a substantial question of fact or law as presenting a sufficient "public purpose" to warrant the granting of leave to sue. Accordingly, leave will be denied only in the presence of other overriding consideration. (81 Ops.Cal.Atty.Gen. 94, 98 (1998).) We find no countervailing considerations herein. Whether relator's residence within the Fifth District, both past and present, satisfies the requirements of Water Code section 30508 is a matter for judicial resolution.

Accordingly, the application for leave to sue in quo warranto is GRANTED.

\* \* \* \* \*