BILL LOCKYER Attorney General MARC J. NOLAN Deputy Attorney General
CAMERON BROTHERS CONSTRUCTION COMPANY has requested leave to sue in quo warranto upon the following question:
Is Clayton Isemann unlawfully holding the office of director of the Borrego Springs Park Community Services District because he does not reside in the district?
 CONCLUSION
Whether Clayton Isemann is unlawfully holding the office of director of the Borrego Springs Park Community Services District because he does not reside in the district presents substantial questions of fact and law warranting judicial resolution.
 ANALYSIS
Cameron Brothers Construction Company ("Relator") alleges that Clayton Isemann ("Defendant") does not reside in the Borrego Springs Community Services District ("District") and thus is ineligible to serve on the District's board of directors. Relator requests that we grant leave to sue in quo warranto to remove Defendant from his office.
On May 21, 2005, Defendant was appointed to fill a vacancy on the board of directors of the District.[1] Relator alleges that Defendant resides in Valley Center, County of San Diego, outside the boundaries of the District. Relator also alleges that Defendant, as recently as October 7, 2005, stated that he does not reside in the District, that he has no intention of residing in the District, and that he is not required to reside in the District in order to serve as a District director.
In response, Defendant acknowledges that he resides outside the District, and he does not deny having made the October 7, 2005, statements that Relator has attributed to him. Nonetheless, Defendant counters that neither the District's rules nor the customs followed in what he characterizes as a "seasonal community" require him to be a "full-time resident" of the District in order to serve as a District director. Referring to a condominium formerly owned by his parents, Defendant states that he has "had ties" with the District since at least 1971.[2]
Defendant also alleges that certain property located within the District, described as the "Slice Court property," is his "domicile," even though it is in the name of Defendant's uncle, Robert Zinser. Defendant states that he is his uncle's legal agent with regard to the Slice Court property,[3] that he acts as a caretaker of the property, that he will become executor of the property upon his uncle's death, and that he has regularly visited the property for many years, at least bi-monthly, performing necessary maintenance duties. Defendant also states that he spends the night at the Slice Court property approximately two times per month, that the Slice Court property is "the one place to which [he has] the intention of always returning," and that he has on repeated occasions expressed a desire to live there full-time upon his retirement. Finally, Defendant asserts that he is registered to vote in the District, that his vehicle is registered in his name at the Slice Court property, that his driver's license lists the Slice Court property address, and that he receives mail at a post office box assigned to the Slice Court property.[4]
Section 803 of the Code of Civil Procedure provides that an action in the nature of quo warranto "may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon the complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office. . . ." Quo warranto is the exclusive remedy in cases where it is available. (SeeNicolopulos v. City of Lawndale (2001) 91 Cal.App.4th 1221,1225; Cooper v. Leslie Salt Co. (1969) 70 Cal.2d 627, 633.)
We employ a two-part test in determining whether to grant leave to sue. First, is there a substantial question of fact or law requiring judicial resolution? If so, would the overall public interest be served by allowing a quo warranto action to be filed? (See 86 Ops.Cal.Atty.Gen. 194, 195 (2003); 85 Ops.Cal.Atty.Gen. 101, 102 (2002); 83 Ops.Cal.Atty.Gen. 181, 182 (2000); 81 Ops.Cal.Atty.Gen. 98, 101 (1998).)
The Community Services District Law (Gov. Code, §§ 61000-61144)[5] provides for the establishment of community services districts, entities that "possess many of the rights, and perform many of the functions, normally regarded as municipal in nature." (73 Ops.Cal.Atty.Gen. 183, 185 (1990); see 67 Ops.Cal.Atty.Gen. 145, 148 (1984).) When Defendant was appointed to the office of District director,[6] former section 61200 provided in relevant part: "Each district shall have a board of . . . directors . . . all of whom shall be registered electors residing within the boundaries of the proposed district. . . ." (See Stats. 1957, ch. 931, § 1.) When section 61200 was repealed in 2005 (Stats. 2005, ch. 249, § 2), it was replaced by section 61040 (Stats. 2005, ch. 249, § 3), subdivision (b) of which now provides in relevant part: "No person shall be a candidate for the board of directors unless he or she is a voter of the district. . . ."
Both the Community Services District Law and the Elections Code define a "voter" as an elector who is registered under the Elections Code. (§ 61002, subd. (l); Elec. Code, § 359.) In turn, an "elector" is defined as "any person who is a United States citizen 18 years of age or older and a resident of an election precinct at least 15 days prior to an election." (Elec. Code, §321; see also Neilson v. City of California City (2005)133 Cal.App.4th 1296, 1312-1313 [a "qualified elector" of a particular district is a properly registered voter of that district].) A voter lists his or her "residence" on the affidavit of registration. (Elec. Code, § 2150, subd. (a)(3).) Since an elector must reside in the particular precinct or district where he or she is registered to vote, we believe that a substantial question of law is presented whether Defendant is eligible to be a "voter of the district" (§ 61040, subd. (b)) inasmuch as he acknowledges residing outside the District's boundaries.
In this regard, section 244 provides:
 "In determining the place of residence the following rules shall be observed:
 "(a) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she returns in seasons of repose.
"(b) There can only be one residence.
 "(c) A residence cannot be lost until another one is gained.
". . . . . . . . . . . . . . . . . . . . . . . . . .
 "(f) The residence can be changed only by the union of act and intent.
". . . . . . . . . . . . . . . . . . . . . . . . . ."
The term "residence," as used in section 244, means "legal residence" or "domicile." (Walters v. Weed (1988) 45 Cal.3d 1,7-8; Smith v. Smith (1955) 45 Cal.2d 235, 239; see also Elec. Code, § 349, subd. (a); Fenton v. Board of Directors, supra,
156 Cal.App.3d at pp. 1113-1114; 79 Ops.Cal.Atty.Gen. 21, 25-26 (1990).) A "domicile" is a place of physical presence coupled with the intention to make that place one's permanent home. (86 Ops.Cal.Atty.Gen. 82, 83 (2003).) Although a person may have more than one physical residence at any given time, he or she has only one domicile. (Smith v. Smith, supra, 45 Cal.2d at p. 239;DeMiglio v. Mashore (1992) 4 Cal.App.4th 1260, 1268; see Elec. Code, § 349, subds. (b), (c).) Domicile, once established, is presumed to continue until it is shown that a new domicile has been acquired. (Walters v. Weed, supra, 45 Cal.3d at pp. 7-8;Murphy v. Travelers Ins. Co. (1949) 92 Cal.App.2d 582, 587.) Accomplishing a change of domicile requires both a physical presence in the new locality plus the intent to make the place one's new home. (DeMiglio v. Mashore, supra, 4 Cal.App.4th at p. 1268; see also 86 Ops.Cal.Atty.Gen., supra, at p. 196.) "The mere intention to acquire a new domicile, without the fact of removal avails nothing, neither does the fact of removal without the intention." (Elec. Code, § 2024.)
Here, despite having taken steps to associate himself with property located within the District, Defendant concedes that he resides outside the District. And while Defendant asserts an intent to make the Slice Court property within the District his permanent home or "domicile" when he retires in the future, such an assertion does not establish legal residency, past or present, in the District for purposes of section 244.
Defendant's responses to Relator's contentions may reasonably be resolved in a quo warranto action. Does the fact that Defendant is now a "voter" in the District satisfy the requirements of section 61040 even though he concedes that he resides outside the District? Does section 61040 apply to him at all since he was appointed and was never a "candidate" seeking election to the board? Does former section 61200 apply to him even though it has now been repealed?
We do not decide here how a court will ultimately resolve the question of Defendant's eligibility to hold the office of District director. As we observed in 12 Ops.Cal.Atty.Gen. 340, 341 (1949):
 "In acting upon an application for leave to sue in the name of the people of the State, it is not the province of the Attorney General to pass upon the issues in controversy, but rather to determine whether there exists a state of facts or question of law that should be determined by a court in an action quo warranto; that the action of the Attorney General is a preliminary investigation, and the granting of the leave is not an indication that the position taken by the relator is correct, but rather that the question should be judicially determined and that quo warranto is the only proper remedy."
Relator's allegations raise substantial issues of fact and law as to Defendant's place of domicile and eligibility to serve as a District director. We have generally viewed the existence of such substantial issues as presenting a sufficient public purpose to warrant the granting of leave to sue in quo warranto, absent other overriding considerations. (See 85 Ops.Cal.Atty.Gen. 90, 93-94 (2002); 82 Ops.Cal.Atty.Gen. 78, 81-82 (1999); 81 Ops.Cal.Atty.Gen. 94, 98 (1998).) No such considerations are present here. Rather, both the public and the District's board of directors have an interest in the judicial resolution of this matter. Accordingly, the application for leave to sue in quo warranto is GRANTED.
[1] A District director is normally elected to office. However, when a vacancy arises on the board, the remaining directors may appoint a person to fill the vacancy for the remainder of the term. (See Gov. Code, §§ 1780, 61042, subd. (c).)
[2] Defendant has submitted a copy of a grant deed, recorded November 4, 2005, in which Robert B. Zinser, identified as Defendant's uncle, and Audrey J. Zinser, conveyed to Defendant and his wife an undivided one-half interest in a condominium located within the District.
[3] Defendant has also submitted a copy of a power of attorney, notarized on November 14, 2005, in which R.B. Zinser appointed Defendant to act as his attorney in fact with regard to managing Zinser's properties in Borrego Springs, including the Slice Court property.
[4] With regard to voting, Defendant has submitted a voter registration form, signed on April 29, 2005, listing the Slice Court property as his residence address; a letter, dated October 5, 2005, from the San Diego County Registrar of Voters confirming that he was registered to vote in the county; and a photocopy of a voting stub from the November 8, 2005, special statewide election. Defendant has also presented a vehicle registration form, dated October 11, 2005, showing Defendant as the registered owner of a 1993 Jeep and listing the Slice Court property as his address; a photocopy of his driver's license and change of address form, indicating that, at some unspecified time, he changed his address from a location in Valley Center to the Slice Court property; and a photocopy of an envelope mailed to the post office box assigned to the Slice Court property.
[5] All further references to the Government Code are by section number only.
[6] A director of a community services district holds a "public office" for purposes of a quo warranto action. (73 Ops.Cal.Atty.Gen., supra, at p. 185; see also Fenton v. Boardof Directors (1984) 156 Cal.App.3d 1107, 1110-1117; 68 Ops.Cal.Atty.Gen. 337, 344 (1985).)