EDMUND G. BROWN JR.
Attorney General
MARC J. NOLAN
Deputy Attorney General
THE HONORABLE DENNIS HERRERA, CITY ATTORNEY, CITY AND COUNTY OF SAN FRANCISCO, has requested leave to sue in quo warranto upon the following question:
Is Edmund Jew unlawfully serving as a member of the Board of Supervisors of the City and County of San Francisco because he has not resided in District Four at all times required by the city's charter? *Page 2 
 CONCLUSION
Whether Edmund Jew is unlawfully serving as a member of the Board of Supervisors of the City and County of San Francisco because he has not resided in District Four at all times required by the city's charter presents substantial questions of fact and law warranting judicial resolution; the application for leave to sue in quo warranto is GRANTED.
 ANALYSIS
The City and County of San Francisco (City) has an eleven-member board of supervisors (Board) that serves as its legislative body. The City's charter provides that each supervisor is to be elected by the voters of his or her respective supervisorial district, rather than by a citywide vote. (Charter, §§ 2.100, 13.110, subds. (a), (b), (e).) The charter further specifies:
 Each member of the board of supervisors . . . must have resided in the district in which he or she is elected for a period of not less than 30 days immediately preceding the date he or she files a declaration of candidacy for the office of Supervisor, and must continue to reside therein during his or her incumbency, and upon ceasing to be such resident shall be removed from office.
(Id. at § 13.110, subd. (e).)
City Attorney Dennis Herrera (Relator) alleges that Edmund Jew (Defendant) is unlawfully serving as a member of the Board because he has not resided at all times required by the City's charter in District Four, the district in which he was elected. Relator requests leave to sue in quo warranto to remove Defendant from office. We conclude that a judicial resolution of this matter would serve the public interest.
On August 11, 2006, Defendant filed his declaration of candidacy with the City's Department of Elections, seeking to be elected as the supervisor for District Four. In that filing, which Defendant signed under penalty of perjury, Defendant stated that his current residence address was 2450 28th Avenue and that his business address was 118 Waverly Place. The 28th Avenue address is within District Four; the Waverly Place address is not. At all relevant times, the 28th Avenue property has been owned by a trust in the name of Defendant's parents. On November 7, 2006, Defendant was elected to represent District Four. On December 5, 2006, the City's mayor appointed Defendant to serve out the *Page 3 
remainder of his predecessor's term of office. On January 8, 2007, Defendant was sworn into office to begin his own term.
On June 12, 2007, the San Francisco District Attorney filed a nine-count felony complaint against Defendant, alleging that Defendant had committed perjury and other crimes in connection with statements made on his candidacy declaration forms and other official documents regarding his residence at the 28th Avenue address. On August 1, 2007, a San Francisco Superior Court judge ordered Defendant to stand trial on these charges. On August 20, 2007, Defendant was arraigned and pleaded not guilty.
On September 20, 2007, the United States Attorney charged Defendant with mail fraud (18 U.S.C. §§ 1341, 1346) based upon his involvement in an alleged extortion and bribery scheme while acting as a City supervisor. On September 21, 2007, Defendant pleaded not guilty to the federal charges.
On September 25, 2007, the City's mayor initiated removal proceedings against Defendant on charges of official misconduct involving, among other things, Defendant's residency outside the District. The matter has been referred to the City's Ethics Commission, which is to conduct a hearing on the charges, and then transmit a transcript of that hearing to the Board of Supervisors with a recommendation as to whether the charges should be sustained; Defendant's removal from office would require a three-fourths vote of the Board to sustain the charges within thirty days of the Board's receipt of the record of the Ethics Commission hearing. (Charter, § 15.105, subd. (a).)
With respect to Defendant's residency, Relator has provided sworn declarations from persons whose residences are in close proximity to the 28th Avenue address. Each of these individuals states, in essence, that the house at this address appeared to be unoccupied and unfurnished for several years immediately preceding May 2007. In addition, Relator has presented various items of documentary evidence which indicate that (1) the 28th Avenue address had no garbage collection service between June 2003 and May 2007, and receives no telephone, cable, or satellite television service, (2) the 28th Avenue address had no open account for water service between March and September 2006, and after water service was initiated, the water usage at that address was far below the usage of other residences in the area, (3) gas and electric usage at the 28th Avenue address was significantly below average for the time periods in question, (4) Defendant received no first-class mail at the 28th Avenue address, and (5) Defendant has claimed, on various records, that his home address during relevant periods was the 118 Waverly Place address or the residence owned by his wife in the City of Burlingame. *Page 4 
Defendant claims that he "officially" moved into the 28th Avenue residence in May or June of 2006, but that he has been having some remodeling work done on the house, precluding him from living there on a full-time basis from July 2006 until the present. Defendant asserts that he "splits his time at several different locations and . . . has a busy daily schedule that does not allow for more regular interactions with his neighbors." Defendant states that the 28th Avenue address is his legal residence, that the low water and utility bills show only that his use of the 28th Avenue residence is "minimal," and that his personal choice to receive all official correspondence at the 118 Waverly Place business address does not prevent the 28th Avenue residence from constituting his domicile. Defendant has filed sworn declarations by persons stating that Defendant was present at the 28th Avenue address on one or more occasions in the recent past. Defendant has also listed the 28th Avenue address as his residence in registering to vote.
Charter cities have "plenary authority" to place in their charters provisions governing the election and removal of their officers and employees. (Cal. Const., art. XI, § 5, subd. (b)(4); see Johnson v.Bradley (1992) 4 Cal.4th 389, 403-406; Traders Sports, Inc. v. City ofSan Leandro (2001) 93 Cal.App.4th 37, 46-47.) Here, while the City's charter states that a supervisor "shall be removed from office" for failing to meet the charter's residency requirements, it does not specify the removal process. (Charter, § 13.110(e).) However, the charter declares that where it is silent, "all City and County elections shall be governed by the provisions of applicable state laws." (Id. at § 13.100.)
Turning then to state law, we find that section 803 of the Code of Civil Procedure provides that an action in the nature of quo warranto "may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon the complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office. . . ." In examining the papers filed by the parties pursuant to our regulations (Cal. Code Regs., tit. 11, §§ 1-11), we employ a two-part test in determining whether to grant leave to sue. First, is there a substantial question of fact or law appropriate for judicial resolution? Second, if such a substantial question exists, would the overall public interest be served by allowing a quo warranto action to be filed? (See 89 Ops.Cal.Atty.Gen. 285, 286
(2006); 86 Ops.Cal.Atty.Gen. 194, 195 (2003); 85 Ops.Cal.Atty.Gen. 101,102 (2002); 83 Ops.Cal.Atty.Gen. 181, 182 (2000).)
The office of supervisor, which in this instance encompasses membership on the governing body of both a city and a county, is a public office. (Charter, §§ 1.101, 2.100; see, e.g.,86 Ops.Cal.Atty.Gen. 205, 206-207 (2003) [(county supervisor)].) Under the City's charter, a person's eligibility to serve as a supervisor depends upon where the person "resides" or "ha[s] resided." (Charter, § 13.110, subd. (e).) However, neither the charter nor *Page 5 
the City's Municipal Elections Code further defines these terms, or such variants as "resident" or "residence."
Turning again to state law, we find that Government Code section244[1] defines "residence" in part as follows:
 In determining the place of residence the following rules shall be observed:
 (a) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose, and to which he or she returns in seasons of repose.
 (b) There can only be one residence.
 (c) A residence cannot be lost until another is gained.
 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 (f) The residence can be changed only by the union of act and intent.
The term "residence," as used in section 244, means "legal residence" or "domicile." (Walters v. Weed (1988) 45 Cal.3d 1, 7-8; Smith v.Smith (1955) 45 Cal.2d 235, 239; see also Elec. Code, § 349, subd. (a);Fenton v. Board of Directors (1984) 156 Cal.App.3d 1107, 1113-1114;79 Ops.Cal.Atty.Gen. 21, 25-26 (1990).) A "domicile" is a place of physical presence coupled with the intention to make that place one's permanent home. (86 Ops.Cal.Atty.Gen. 82, 83 (2003).) Although a person may have more than one physical residence at any given time, he or she has only one legal residence or domicile. (Smith v. Smith, supra,45 Cal.2d at p. 239; DeMiglio v. Mashore (1992) 4 Cal.App.4th 1260, 1268; see Elec. Code, § 349, subds. (b), (c).)
Domicile, once established, is presumed to continue until it is shown that a new domicile has been acquired. (Walters v. Weed, supra,45 Cal.3d at pp. 7-8; Murphy v. Travelers Ins. Co. (1949)92 Cal.App.2d 582, 587.) A change of domicile requires both a physical presence in the new locality plus the intent to make that place one's new home. (DeMiglio v. Mashore, supra, 4 Cal.App.4th at p. 1268; see also86 Ops.Cal.Atty.Gen., supra, at p. 194, 196.) "The mere intention to acquire a new domicile, without the fact of *Page 6 
removal avails nothing, neither does the fact of removal without the intention." (Elec. Code, § 2024; see also § 244, subd. (f).)
Defendant does not claim that he was domiciled within District Four prior to May or June 2006. When a candidate asserts eligibility for office on the basis of acquiring a new domicile within the jurisdiction in question, he or she has the burden of demonstrating such a change of domicile. (DeMiglio v. Mashore, supra, 4 Cal.App.4th at pp. 1268-1269; see Sheehan v. Scott (1905) 145 Cal. 684, 688-689; § 244, subd. (f); Elec. Code, § 2024.)
Here, we believe that substantial issues of fact and law have been presented concerning whether Defendant has met his burden of demonstrating, through evidence of his physical presence at the 28th Avenue location and indicia of his intent to make the property his new permanent home, that he has changed his domicile from outside District Four to within District Four. Relator has presented evidence to support his contention that the 28th Avenue home was unoccupied, unfurnished, and unused as a residence during the time the City's charter required Defendant to have a legal residence within District Four. Although Defendant disputes Relator's evidence, we believe that the matter is appropriate for judicial resolution. As we observed in12 Ops.Cal.Atty.Gen. 340, 341 (1949):
 In acting upon an application for leave to sue in the name of the people of the State, it is not the province of the Attorney General to pass upon the issues in controversy, but rather to determine whether there exists a state of facts or question of law that should be determined by a court in an action quo warranto; that the action of the Attorney General is a preliminary investigation, and the granting of the leave is not an indication that the position taken by the relator is correct, but rather that the question should be judicially determined and that quo warranto is the only proper remedy.
We have generally viewed the existence of substantial issues of fact and law as presenting a sufficient public purpose to warrant the granting of leave to sue in quo warranto, absent other overriding considerations. (See85 Ops.Cal.Atty.Gen. 90, 93-94 (2002);82 Ops.Cal.Atty.Gen. 78, 81-82 (1999);81 Ops.Cal.Atty.Gen. 94, 98 (1998).) Here, Defendant asserts that granting leave to sue would not serve the public interest, because the pending criminal case brought by the District Attorney, involving related matters, will likely resolve the issues presented in the quo warranto action.
We view the state criminal proceedings as determining whether Defendant has committed the charged crimes, and if so, what criminal punishment should be imposed. In contrast, a quo warranto action filed by Relator would have as its focus whether Defendant *Page 7 
has complied with the City's charter requirements regarding residency, regardless of whether he may have violated any criminal laws.
On the one hand, an acquittal on perjury charges filed against Defendant for claiming the 28th Avenue address as his legal residence would not affirmatively demonstrate Defendant's legal residency at that address, but only that the prosecution had not proved beyond a reasonable doubt that Defendant had made a willful statement under oath of a material matter which he knew to be false, with the specific intent to do so. (See Pen. Code, § 118; People v. Garcia (2006)39 Cal.4th 1070, 1091; Chein v. Shumsky (9th Cir. 2004) 373 F.3d 978, 983-984; CALJIC No. 7.21 (2005 rev.).)
On the other hand, if Defendant were to be convicted of one or more of the charged state or federal offenses, his conviction would not necessarily result in his removal from office. Under subdivision (h) of section 1770, Defendant's "conviction of a felony or any offense involving a violation of his or her official duties" would cause his office to become vacant, and either a state conviction stemming from a false claim of residency within the City or a federal conviction on a mail fraud charge involving extortion and bribery while acting as a supervisor would appear to satisfy the statutory predicate for removal from office. However, the City's charter also addresses the removal of City officials for criminal convictions, providing that the mayor "must immediately remove from office" any of certain specified officials, including a member of the Board of Supervisors, upon "a court's final conviction of that official of a felony crime involving moral turpitude" if the Ethics Commission makes a determination "after a hearing, that the underlying crime for which the official was convicted warrants removal." (Charter, § 15.105, subd. (c)(1)(A).)
A substantial question of law is thus presented concerning whether section 1770 is applicable since the City's charter appears to be in conflict with its provisions. As noted above, under the Constitution, the City has "plenary authority" to place in its charter provisions governing the election and removal of City officers and employees. (Cal. Const., art. XI, § 5, subd. (b)(4).) If the provisions of the City's charter control, Defendant might not be removed from office following any "conviction of a felony or of any offense involving a violation of his or her official duties," as provided in section 1770, subdivision (h), since the City's Ethics Commission could determine that the underlying crime did not warrant removal. In addition, the official misconduct charges brought before the City's Ethics Commission by the City's mayor will only result in Defendant's removal from office if, after the Ethics Commission conducts a hearing on the charges and issues a recommendation as to their disposition, a three-fourths vote of the Board in fact sustains those charges within 30 days of the date that the Board receives the record of the Commission's hearing. (Charter, § 15.105, subd. (a).) *Page 8 
In a quo warranto action, in contrast, the issue of Defendant's eligibility to hold office, which in the present case includes residency requirements that pre-date Defendant's election to office, is the sole focus of the proceeding, and removal from office is required to be part of any judgment rendered against the defendant:
 When a defendant, against whom such action has been brought, is adjudged guilty of usurping or intruding into, or unlawfully holding any office, franchise, or privilege, judgment must be rendered that such defendant be excluded from the office, franchise, or privilege, and that he pay the costs of the action.
(Code Civ. Proc., § 809, italics added.) Accordingly, not only are there differences between the burdens of proof in the pending criminal proceedings and in the proposed quo warranto action, but the possible sanctions may differ significantly as well. The pending proceedings of the City's Ethics Commission also present considerable procedural differences from that of the proposed quo warranto action.
We find that it would be in the public interest, particularly for the Board and the residents and voters of District Four, to have a prompt judicial resolution of whether Defendant has fulfilled the eligibility requirements for the public office he now occupies. Accordingly, Relator's application for leave to sue in quo warranto is GRANTED.
[1] All further references to the Government Code are by section numbers only. *Page 1